E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
MITCHELL M. SULIMAN (Cal. Bar No. 301879)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0721/(951) 276-6026
    Facsimile:  (213) 894-0141/(951) 276-6202
    E-mail:    John.Lulejian@usdoj.gov
            Mitchell.Suliman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>           v.<br><br>MICHAEL ALEJANDRO<br>  CASTILLO MURGA,<br><br>      A Fugitive from the<br>      Government of El<br>      Salvador. | No. 2:24-mj-06387<br><br><u>UNITED STATES' OPPOSITION TO</u><br><u>FUGITIVE'S MOTION FOR BAIL;</u><br><u>MEMORANDUM OF POINTS AND</u><br><u>AUTHORITIES</u><br><br>Date:     December 13, 2024<br>Time:     11:00 a.m.<br>Location:  Courtroom of the<br>            Hon. Sheri Pym |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys John J. Lulejian and Mitchell M. Suliman, hereby files its Opposition to Fugitive's Motion for Bail.  This opposition is based on the attached Memorandum of Points and Authorities, the United States' Request for Detention, and any evidence that may be presented at the December 13, 2024, hearing on this matter.

For the reasons set forth in detail below, the government respectfully requests the Court deny CASTILLO MURGA's motion and continue to detain him pending extradition to El Salvador.


Dated: December 12, 2024          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  */s/ John J. Lulejian*
                                  JOHN J. LULEJIAN
                                  MITCHELL M. SULIMAN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

TABLE OF AUTHORITIES.................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION......................................................................1

II.   ARGUMENT............................................................................2

      A.    CASTILLO MURGA Should Be Detained Because He Poses a
            Significant Risk of Flight and Danger to the Community....2

            1.    CASTILLO MURGA Has the Incentive, Means, and
                  Ability to Flee........................................................2

            2.    CASTILLO MURGA Is a Danger to Community.............5

      B.    No "Special Circumstances" Exist that Justify Bail........6

            1.    CASTILLO MURGA Cannot Demonstrate Substantial
                  Likelihood of Success in the Extradition
                  Proceedings.........................................................7

            2.    The Possibility of Political Persecution Upon
                  Extradition is Not a "Special Circumstance".........8

            3.    Defense Preparation is Not a "Special
                  Circumstance".....................................................12

            4.    CASTILLO MURGA's Character and Support in the
                  Community are Not "Special Circumstances"..........13

            5.    CASTILLO MURGA's Alleged Lack of Danger to the
                  Community is Not a "Special Circumstance"..........14

            6.    CASTILLO MURGA's Humanitarian Factors are Not
                  "Special Circumstances".....................................15

            7.    The Possibility of Delayed Extradition
                  Proceedings is Not a "Special Circumstance".........16

III.  CONCLUSION.........................................................................18

i

# TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

<u>FEDERAL CASES</u>

<u>Barapind v. Enomoto</u>,
    400 F.3d 744 (9th Cir. 2005) (en banc) ................. 11, 12

<u>Barapind v. Enomoto</u>,
    360 F.3d 1061 (9th Cir. 2004) ............................ 11

<u>Charlton v. Kelly</u>,
    229 U.S. 447 (1913) ...................................... 12

<u>Escobedo v. United States</u>,
    623 F.2d 1098 (5th Cir. 1980) ............................ 11

<u>Glucksman v. Henkel</u>,
    221 U.S. 508 (1911) ...................................... 10

<u>Hooker v. Klein</u>,
    573 F.2d 1360 (9th Cir. 1978) ............................ 13

<u>Hoxha v. Levi</u>,
    465 F.3d 554 (3d Cir. 2006) ............................... 9

<u>In re Extradition of Adame</u>,
    Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682
    (S.D. Tex. Mar. 25, 2013) ................................. 5

<u>In re Extradition of Antonowicz</u>,
    244 F. Supp. 3d 1066 (C.D. Cal. 2017)................... 2, 15

<u>In re Extradition of Azizi</u>,
    No. 5:14-xr-90282 PSG, 2014 WL 1995083
    (N.D. Cal. May 13, 2014) ................................. 14

<u>In re Extradition of Beresford-Redman</u>,
    753 F. Supp. 2d 1078 (C.D. Cal. 2010) ................ <u>passim</u>

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                      PAGE

In re Extradition of Drumm,
    150 F. Supp. 3d 92 (D. Mass. 2015) ......................... 15

In re Extradition of Heilbronn,
    773 F. Supp. 1576 (W.D. Mich. 1991) ....................... 17

In re Extradition of Kin-Hong,
    913 F. Supp. 50 (D. Mass. 1996) ............................. 6

In re Extradition of Kirby,
    106 F.3d 855 (9th Cir. 1996) ........................... 16, 17

In re Extradition of Mahabir,
    858 F. Supp. 504 (D. Md. 1994) ............................ 16

In re Extradition of Mainero,
    950 F. Supp. 290 (S.D. Cal. 1996) ....................... 6, 16

In re Extradition of Martinelli Berrocal,
    263 F. Supp. 3d 1280 (S.D. Fla. 2017) .................. 5, 12

In re Extradition of Nacif-Borge,
    829 F. Supp. 1210 (D. Nev. 1993)....................... 13, 14

In re Extradition of Perez-Cueva,
    No. 16-MJ-0233, 2016 WL 884877
    (C.D. Cal. Mar. 7, 2016) ............................... 5, 6

In re Extradition of Russell,
    805 F.2d 1215 (5th Cir. 1986) ............................ 15

In re Extradition of Santos,
    473 F. Supp. 2d 1030 (C.D. Cal. 2006) .................. 7, 14

In re Extradition of Shaw,
    No. 14-MC-81475, 2015 WL 521183
    (S.D. Fla. Feb. 6, 2015) .................................. 5

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

In re Extradition of Sidali,
     868 F. Supp. 656 (D.N.J. 1994) ............................. 13

In re Extradition of Smyth,
     976 F.2d 1535 (9th Cir. 1992) ......................... passim

In re Extradition of Sutton,
     898 F. Supp. 691 (E.D. Mo. 1995) .......................... 14

In re Extradition of Tehrani,
     No. SA 16-MJ-250-RAO, 2016 WL 3456971
     (C.D. Cal. June 17, 2016) ................................. 12

In re Extradition of Valles,
     36 F. Supp. 2d 1228 (S.D. Cal. 1998) ...................... 13

In re Lincoln,
     228 F. 70 (E.D.N.Y. 1915) ................................. 11

Jhirad v. Ferrandina,
     536 F.2d 478 (2d Cir. 1976) ............................... 3

Meza v. U.S. Atty. Gen.,
     693 F.3d 1350 (11th Cir. 2012) ............................ 9

Munaf v. Geren
     553 U.S. 674 (2008) ....................................... 10

Neely v. Henkel,
     180 U.S. 109 (1901) ....................................... 10

Noeller v. Wojdylo,
     922 F.3d 797 (7th Cir. 2019) .............................. 11

Prasoprat v. Benov,
     294 F. Supp. 2d 1165 (C.D. Cal. 2003),
     affirmed 421 F.3d 1009 (9th Cir. 2005) .................... 11

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

Quinn v. Robinson,
    783 F.2d 776 (9th Cir. 1986) ............................... 11

Salerno v. United States,
    878 F.2d 317 (9th Cir. 1989) .................... 2, 7, 15, 16

Santos v. Thomas,
    830 F.3d 987 (9th Cir. 2016) (en banc) .......... 8, 12, 13, 17

Trinidad y Garcia v. Thomas,
    683 F.3d 952 (2012) (en banc) (per curiam) .............. 9, 11

United States ex rel. McNamara v. Henkel,
    46 F.2d 84 (S.D.N.Y. 1912) ................................. 17

United States v. Botero,
    604 F. Supp. 1028 (S.D. Fla. 1985) ........................... 2

United States v. Kin-Hong,
    110 F.3d 103 (1st Cir. 1997) ................................. 9

United States v. Leitner,
    784 F.2d 159 (2d Cir. 1986) ................................. 15

United States v. Williams,
    611 F.2d 914 (1st Cir. 1979) ............................. 13, 15


U.S. STATUTES

18 U.S.C. § 3184 ............................................... 8

18 U.S.C. § 3186 ............................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

On October 23, 2024, fugitive MICHAEL ALEJANDRO CASTILLO MURGA ("CASTILLO MURGA" or "the fugitive") initially appeared in this Court pursuant to a warrant based on a request from El Salvador for his arrest and extradition.  As previously detailed, El Salvador seeks CASTILLO MURGA's extradition so that he may stand trial for stabbing Melvi Fernanda Najera Quezada, the mother of his child, to death in a desolate location on January 31, 2019, and abandoning his child, who was one-year, seven-months-old, to die in that location.  At the initial appearance, this Court granted the United States' request for detention and set a status conference for November 13, 2024.  (See Docket No. 10.)  On November 13, 2024, the Court set a detention hearing on December 13, 2024, and ordered briefing.  (See Docket No. 16.)

On December 9, 2024, CASTILLO MURGA filed a brief opposing his continued detention, in which he alleged that he is neither a flight risk or a danger to the community.  (See Docket No. 17 at 8.)  He also alleged that "special circumstances" exist, namely, a high likelihood of success against extradition, potential political persecution upon return to El Salvador, the necessity for active defense preparation, strong community and family ties in the United States, absence of any criminal history, humanitarian concerns, and anticipated delays in the extradition proceedings. (See id. at 9.)

As set forth in detail below, these assertions fail. Accordingly, the United States respectfully requests that the Court

1  deny CASTILLO MURGA's application and continue to detain him pending

2  extradition.

3  **II.  ARGUMENT**

4        As detailed in the United States' request for detention,

5  "[t]here is a presumption against bail in an extradition case."

6  Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989).  In

7  light of the strong presumption against bail, international fugitives

8  may not be released on bail unless they demonstrate that (1) they are

9  neither a flight risk nor a danger to the community, and (2) "special

10 circumstances" warrant their release.  See, e.g., In re Extradition

11 of Antonowitz, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017).  For the

12 reasons set forth below, CASTILLO MURGA has failed to prove that he

13 is not a flight risk, that he is not a danger to the community, and

14 that "special circumstances" exist that warrant bail.

15       **A.   CASTILLO MURGA Should Be Detained Because He Poses a**

16            **Significant Risk of Flight and Danger to the Community**

17            1.   CASTILLO MURGA Has the Incentive, Means, and Ability

18                 to Flee

19       As the party seeking release, CASTILLO MURGA has the burden to

20 demonstrate that he is not a flight risk.  He cannot do so.

21       The fact that CASTILLO MURGA has already sought to evade

22 prosecution in El Salvador is indicative of his risk of flight in the

23 United States.  Cf. United States v. Botero, 604 F. Supp. 1028, 1035

24 (S.D. Fla. 1985) ("In the context of determining whether a defendant

25 poses a substantial risk of flight, this Court does not find any

26 meaningful distinction between a person who left the country when he

27 learned of pending charges and one who already outside the country

28 refuses to return to face these charges.  The intent is the same—the

2

avoidance of prosecution.") (citing <u>Jhirad v. Ferrandina</u>, 536 F.2d 478, 483 (2d Cir. 1976)).  CASTILLO MURGA's claim that "[e]ven with the knowledge of potential legal proceedings against him in El Salvador, he never attempted to hide or flee" (Docket No. 17 at 9), is contradicted by the evidence in its extradition request. According to El Salvador, immediately after allegedly killing Melvi Fernanda Najera Quezada, CASTILLO MURGA allegedly traveled to his grandmother's house covered in blood and confessed to the crime.[1] (<u>See</u> Docket No. 1 at ¶¶ 4(i)(i)-(iv).)  Shortly thereafter, CASTILLO MURGA's lawyer, allegedly told his client that he had to be "taken out," and drove CASTILLO MURGA and his grandmother away from the house.[2]  (<u>See</u> <u>id.</u> at ¶¶ 4(i)(vi)-(vii).)  According to the Salvadoran Directorate of Migration Control, CASTILLO MURGA left El Salvador, on foot, for Guatemala, using his United States passport at the San Cristobal Border Checkpoint on or about February 2, 2019.  (<u>See</u> <u>id.</u> at ¶ 5.)  In other words, within a day of allegedly confessing to and killing Melvi Fernanda Najera Quezada, CASTILLO MURGA had fled El Salvador.

Likewise, CASTILLO MURGA's claim that he respects the legal process and "would have willingly appeared to present exculpatory evidence" had he been properly notified of any charges (Docket No. 17 at 9), is belied by the fact that CASTILLO MURGA's alleged role in

[1] Immediately after he allegedly killed Melvi Fernanda Najera Quezada, CASTILLO MURGA allegedly sent a photograph of himself covered with blood stains on his face and neck to his girlfriend. (<u>See</u> <u>id.</u> at ¶ 4(f)(ii).)  The Government of El Salvador included this photograph in its extradition request.  The United States has not attached a copy of this photograph to this opposition due to its graphic nature.

[2] During and after the brief stay, CASTILLO MURGA's grandmother, his lawyer, girlfriend, and other individuals allegedly destroyed evidence of the crime.  (<u>See</u> Docket No. 1 at ¶¶ 4(i)(vi)-(viii).)

1  the murder of Melvi Fernanda Najera Quezada and the abandonment of

2  her child to die has been broadly publicized since 2019.[3]  The

3  suggestion that CASTILLO MURGA did not return El Salvador because he

4  did not know that he was wanted to stand trial with others, including

5  his grandmother, for Melvi Fernanda Najera Quezada's murder is

6  absurd.

7      In addition to being a fugitive for five years, CASTILLO MURGA

8  has a strong incentive to flee, as he faces a significant prison

9  sentence – of potentially more than fifty years - if he is extradited

10  and convicted in El Salvador of the crimes for which his extradition

11  is sought.  The Ninth Circuit has recognized that the greater a

12  defendant's sentencing exposure, the greater his incentive to flee.

13

14  _____

15  [3] See, e.g.,
   https://www.elsalvador.com/noticias/nacional/feminicidio-fernanda-
16  najera-homicidios-juzgados/1136557/2024/ (Apr. 16, 2024) (Spanish
   language article describing CASTILLO MURGA's alleged criminal
17  conduct); https://www.elsalvador.com/noticias/nacional/feminicidio-
   fernanda-najera-apaneca-fiscalia-general-elecciones-
18  2024/1123162/2024/ (Feb. 14, 2024) (same);
   https://diariolahuella.com/decretan-detencion-a-sujeto-acusado-del-
19  feminicidio-de-fernanda-najera/ (Apr. 23, 2023) (same);
   https://youtu.be/EQui3enIJNs?si=7dMvOCM5oyu1w0U7 (Apr. 22, 2023)
20  (Spanish language video describing CASTILLO MURGA's alleged criminal
   conduct); https://www.elsalvador.com/noticias/nacional/audiencia-
21  preliminar-feminicidio-michael-alejandro-fernanda-najera/1023854/2022/
   (Dec. 12, 2022) (Spanish language article describing conviction of
22  CASTILLO MURGA's girlfriend for being accessory to femicide,
   admission of CASTILLO MURGA's lawyer of covering up for his client in
23  exchange for conditional suspension of proceedings against him, and
   acquittal of another individual for concealment);
24  https://www.elsalvador.com/noticias/nacional/fernanda-najera-familia-
   retraso-proceso-judicial/993357/2022/ (Sept. 1, 2022) (Spanish
25  language article describing Salvadoran trial of defendants and belief
   that CASTILLO MURGA fled to the United States);
26  https://www.laprensagrafica.com/elsalvador/Quiero-justicia-para-mi-
   hija-aunque-a-ella-no-la-voy-a-recuperar-20211003-0046.html (Oct. 4,
27  2021) (Spanish language article identifying CASTILLO MURGA as a
   fugitive); https://elplaneta.com/2019/06/06/internacional/fiscalia-
28  salvadorena-acusa-hombre-por-el-asesinato/ (Jun. 6, 2019) (Spanish
   language article describing charges against CASTILLO MURGA and
   others).

See <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) (affirming order of detention entered after arrest on complaint where, among other factors, defendant faced even graver penalties under indictment that was subsequently filed and, thus, had "an even greater incentive to consider flight").  In the extradition context, courts have been reluctant to release relators facing penalties far less than CASTILLO MURGA.  <u>See, e.g.</u>, <u>In re Extradition of Martinelli Berrocal</u>, 263 F. Supp. 3d 1280, 1305 (S.D. Fla. 2017) (fugitive's age coupled with "a potential twenty-one-year sentence in Panama" rendered fugitive "serious flight risk"); <u>In re Extradition of Perez-Cueva</u>, No. 16-MJ-0233, 2016 WL 884877, at *3 (C.D. Cal. Mar. 7, 2016) (seriousness of allegations against fugitive "militates against release on bail"); <u>In re Extradition of Shaw</u>, No. 14-MC-81475, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) ("[T]he Defendant is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee."); <u>In re Extradition of Adame</u>, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682, at *7-8 (S.D. Tex. Mar. 25, 2013) (fugitive "has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico").

Accordingly, given these circumstances, no matter what bond package he offers, CASTILLO MURGA poses an unacceptable flight risk.

### 2.   <u>CASTILLO MURGA Is a Danger to Community</u>

In addition to being a flight risk, CASTILLO MURGA poses a danger to the community if this Court were to release him.

CASTILLO MURGA's own claims as to why he is not a danger to the community in the United States is neither consistent nor compelling.

The fact that he has no criminal record and allegedly paid his taxes in no way detracts from the nature of the femicide offense of which CASTILLO MURGA was charged.  Those charges, which CASTILLO MURGA admits are "serious" (Docket No. 17 at 9), renders him a danger to the community both here in the United States and abroad if he were released from custody.  See, e.g., Perez-Cueva, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail").  CASTILLO MURGA has been charged with the unprovoked, cold-blooded murder of Melvi Fernanda Najera Quezada.  As such, CASTILLO MURGA poses a great danger to the community.  This dangerousness by itself renders bail inappropriate.  CASTILLO MURGA also has been charged with heartlessly abandoning his own child to die, who was under the age of two, in the desolate area where he killed the child's mother, by stabbing her to death.  These accusations demonstrate that CASTILLO MURGA poses a great danger to the community and should not be released from custody.

**B.  No "Special Circumstances" Exist that Justify Bail**

The special circumstances standard is "much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act."  In re Extradition of Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996). Notably, the "special circumstances" inquiry is separate from considerations of danger to the community or risk of flight.  See, e.g., Perez-Cueva, 2016 WL 884877, at *2.  "Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition."  In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992)).

In the instant case, CASTILLO MURGA lists several factors that he asserts satisfy his burden of demonstrating "special circumstances." But as set forth below, none of these factors, either individually or in the aggregate, satisfies the stringent standard for permitting his release on bail.

1.    CASTILLO MURGA Cannot Demonstrate Substantial Likelihood of Success in the Extradition Proceedings

For likelihood of success to constitute a "special circumstance," CASTILLO MURGA must establish that he has a "high probability of success" on the particular claim. E.g., Salerno, 878 F.2d at 317 ("Examples of such [special] circumstances include the raising of substantial claims upon which the appellant has a high probability of success . . . ."); see also In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1087 (C.D. Cal. 2010); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1038 (C.D. Cal. 2006). CASTILLO MURGA cannot demonstrate that he is substantially likely to succeed on his claim that extradition is barred for the reasons articulated in his Opposition to Extradition (Docket No. 18). In addition to filing this document prematurely, CASTILLO MURGA ignores the fact that the decision to surrender an American citizen to El Salvador and the interplay of humanitarian concerns is reserved for the Secretary of State, and not part of the Court's analysis. Further, any constitutional challenges to a trial in El Salvador are raised in that nation and not before this Court. Finally, CASTILLO MURGA ignores the fact that, upon review, this Court already found probable cause to issue a warrant for his arrest. (See Docket No. 2.) The United States will set forth additional details supporting a finding of probable cause based on the information provided by El

1  Salvador in its Memorandum in Support of the Request for

2  Certification of Extradition, which will be filed on or before

3  January 17, 2025.

4      For these reasons and the ones set forth below, CASTILLO MURGA

5  fails to prove that he has a high probability of succeeding on his

6  claim that his extradition is not warranted.

7              2.    The Possibility of Political Persecution Upon

8                    Extradition is Not a "Special Circumstance"

9      Without providing supporting evidence or legal authority,

10  CASTILLO MURGA asks this Court to find that the mere possibility of

11  political persecution following extradition is a "special

12  circumstance."  (See Docket No. 17 at 11.)  By asking the Court to

13  make such a finding, CASTILLO MURGA asks the Court to exceed its

14  limited role in the extradition process and, moreover, would conflict

15  with well-settled precedent reserving consideration of such claims

16  for the Secretary of State.

17      Extradition is a two-step process in which a court first

18  determines whether "there is probable cause to extradite" based on

19  the relevant legal requirements, and then the Secretary of State

20  "decides whether to surrender the individual to the requesting

21  state."  Santos v. Thomas, 830 F.3d 987, 993 (9th Cir. 2016) (en

22  banc).  This division is reflected in the statutory framework for

23  extradition, wherein only the Secretary of State, and not the

24  judiciary, may make the discretionary decision of whether the

25  fugitive "may . . . be delivered" to the requesting country.

26  18 U.S.C. § 3186; see 18 U.S.C. § 3184.

27      Such discretion is properly placed in the hands of the Secretary

28  given "the Executive's powers to conduct foreign affairs," which

8

include the ability to "make confidential diplomatic inquiries and receive confidential diplomatic assurances about the treatment of an extraditee."  Trinidad y Garcia v. Thomas, 683 F.3d 952, 961 (2012) (en banc) (per curiam) (Thomas, J., concurring).  Questions about the treatment a fugitive may face upon his return to the requesting country may be considered only by the Secretary in making the discretionary decision regarding surrender.  See, e.g., United States v. Kin-Hong, 110 F.3d 103, 108 (1st Cir. 1997) (following the court's certification decision, "[i]t is then within the Secretary of State's sole discretion to determine whether or not the relator should actually be extradited" based on, inter alia, "humanitarian and foreign policy considerations"); cf. Prasoprat v. Benov, 421 F.3d 1009, 1016 (9th Cir. 2005) ("The magistrate judge has no discretionary decision to make.") (internal quotation marks and citation omitted).

Such questions are not yet ripe for review by a court reviewing an extradition certification, as the Secretary of State has not yet decided whether to surrender the fugitive to the requesting country. See, e.g., Meza v. U.S. Atty. Gen., 693 F.3d 1350, 1356 (11th Cir. 2012) ("There is nothing in the record to suggest that the Secretary has decided whether to surrender [the fugitive].  [The fugitive's] claim about torture is not ripe."); Hoxha v. Levi, 465 F.3d 554, 565 (3d Cir. 2006) (declining to address Albanian fugitive's claim that he would be tortured and possibly killed by Albanian authorities on ripeness grounds).  Indeed, a decision by the Secretary not to surrender the fugitive would moot any concerns about his return to the requesting country.

1  Regardless, the Supreme Court, the Ninth Circuit, and myriad
2  other courts have established that, under the rule of non-inquiry,
3  questions concerning the treatment a fugitive may face in the
4  requesting country lie beyond the limited purview of the judiciary in
5  extradition matters.  Over a century ago, the Supreme Court explained
6  that U.S. courts "are bound by the existence of an extradition treaty
7  to assume that the trial will be fair."  Glucksman v. Henkel, 221
8  U.S. 508, 512 (1911).  More recently, in Munaf v. Geren, the Supreme
9  Court re-affirmed that it is appropriate for the Secretary of State
10  alone to assess practices in the requesting country and the
11  likelihood of an individual being tortured after his transfer there.
12  553 U.S. 674, 700-01 (2008) (citing Neely v. Henkel,
13  180 U.S. 109, 123 (1901)).  In that case, which involved a due
14  process challenge to the transfer of U.S. citizens detained by U.S.
15  military officials within Iraq to Iraqi officials for prosecution,
16  the Court specifically rejected the detainees' argument that
17  principles of non-inquiry were overcome by their allegations that
18  they would likely be tortured if transferred to Iraq.  Id. at 700.
19  "Such allegations are of course matters of serious concern, but . . .
20  that concern is to be addressed by the political branches, not the
21  judiciary."  Id.
22  The Ninth Circuit, like other courts, has "long adhered to the
23  rule of non-inquiry," concluding that "it is the role of the
24  Secretary of State, not the courts, to determine whether extradition
25  should be denied on humanitarian grounds or on account of the
26  treatment that the fugitive is likely to receive upon his return to
27
28

the requesting state." <u>Prasoprat</u>, 421 F.3d at 1016.[4]  Indeed, the Ninth Circuit unequivocally held in <u>Prasoprat</u> that a "magistrate judge does not have any discretion" to deny extradition on humanitarian grounds.  <u>Id.</u>  Similarly, a claim that humanitarian concerns bar extradition "is not cognizable on habeas corpus." <u>Prasoprat v. Benov</u>, 294 F. Supp. 2d 1165, 1171 (C.D. Cal. 2003), aff'd, 421 F.3d 1009; <u>see also, e.g.</u>, <u>Trinidad</u>, 683 F.3d at 956-57, (rule of non-inquiry limits "the scope of habeas review") (emphasis omitted).  Rather, once an extradition has been certified, "it is the Secretary of State, representing the executive branch, who determines whether to surrender the fugitive." <u>Prasoprat</u>, 421 F.3d at 1016.

Accordingly, this Court should not consider CASTILLO MURGA's alleged humanitarian claims, even in the context of bail, as it is beyond its purview.

---

[4] <u>See also, e.g.</u>, <u>Quinn v. Robinson</u>,783 F.2d 776, 789-90 (9th Cir. 1986) (Secretary of State has "sole discretion . . . to refuse extradition on humanitarian grounds because of the procedures or treatment that await a surrendered fugitive"); <u>Barapind v. Enomoto</u>, 360 F.3d 1061, 1077 (9th Cir. 2004) ("The government of the United States, through the Secretary of State, should determine . . . whether diplomatic and treaty relations are being carried out and respected in such a way that it is safe to surrender an alleged criminal under a treaty.") (quoting <u>In re Lincoln</u>, 228 F. 70, 74 (E.D.N.Y. 1915)), <u>on reh'g en banc</u>, 400 F.3d 744 (9th Cir. 2005); <u>Noeller v. Wojdylo</u>, 922 F.3d 797, 808 (7th Cir. 2019) ("Under the settled rule of non-inquiry, the executive branch has sole authority to consider such humanitarian considerations in deciding on extradition requests. . . . [It] is intended to prevent extradition courts from engaging in improper judgments about other countries' law enforcement and judicial procedures.  More important, the rule serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request.") (internal quotation marks and citation omitted); <u>Escobedo v. United States</u>, 623 F.2d 1098, 1107 (5th Cir. 1980) ("[T]he degree of risk to [the fugitive's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch.").

3. <u>Defense Preparation is Not a "Special Circumstance"</u>

A mere general intent to investigate, contest extradition, and appeal is not unusual or sufficient. <u>See</u>, <u>e.g.</u>, <u>Smyth</u>, 976 F.2d at 1535-36; <u>Martinelli</u>, 263 F. Supp. 3d 1298 ("[W]e do not find here that the length of the anticipated extradition process in this case, real or imagined, warrants a finding of special circumstances sufficient to grant bail contrary to the presumption of detention."); <u>In re Extradition of Tehrani</u>, No. SA 16-MJ-250-RAO, 2016 WL 3456971, at *2 (C.D. Cal. June 17, 2016) ("The Ninth Circuit has stated that issues common to all incarcerated defendants do not qualify as 'special circumstances.') <u>See</u> <u>Smyth</u>, 976 F.2d at 1535-36 ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things.").

In his motion, CASTILLO MURGA claims that "[h]is detention hampers his ability to gather evidence and secure testimony that could demonstrate his innocence and contest the extradition." (Docket No. 17 at 11.)  CASTILLO MURGA does not describe why his preparation for his defense is special or unique compared to all other defendants in similar circumstances.  Nor does CASTILLO MURGA explain how any evidence he gathers would be admissible.[5]

_____

[5] It is well established that a fugitive may not introduce evidence that contradicts the evidence submitted by the requesting country "[b]ecause extradition courts do not weigh conflicting evidence in making their probable cause determinations."  <u>Barapind v. Enomoto</u>, 400 F.3d 744, 749 (9th Cir. 2005) (en banc) (internal quotation marks and citation omitted); <u>see also, e.g.</u>, <u>Charlton v. Kelly</u>, 229 U.S. 447, 461-62 (1913) (upholding magistrate judge's decision to exclude "witnesses produced to contradict the testimony for the prosecution" because such an "objection . . . should be taken before or at the time of his trial for the crime, and heard by the court having jurisdiction of the crime"); <u>Santos</u>, 830 F.3d at 993 (a
*(footnote cont'd on next page)*

1    Accordingly, he has failed to demonstrate a "special
2    circumstance" based on his detention.

3        4.    CASTILLO MURGA's Character and Support in the
4              Community are Not "Special Circumstances"

5        To the extent CASTILLO MURGA suggests that his character and
6    support in the community are "special circumstances," he is
7    incorrect.  Instead, these factors are more appropriately considered
8    when conducting the independent flight risk analysis.  See Nacif-
9    Borge, 829 F. Supp. at 1220 ("More often, the character and
10   background of a person subject to extradition are considered in
11   regard to risk of flight and danger to the community rather than as a
12   special circumstance."); see also In re Extradition of Sidali, 868 F.
13   Supp. 656 (D.N.J. 1994) (rejecting "extraordinary character" based on
14   employment, family ties, no prior record, and community respect as
15   special circumstance); In re Extradition of Valles, 36 F. Supp. 2d
16   1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community
17   ties used to assess flight risk).  Further, letters of support
18   vouching for a defendant's trustworthiness do not qualify as a
19   special circumstance.  See Beresford-Redman, 753 F. Supp. 2d at 1089.
20   Also, the fugitive's alleged compliance with the terms of release –
21   something expected of every person under supervision by a court - is
22   not a "special circumstance."  See United States v. Williams, 611
23   F.2d 914, 915 (1st Cir. 1979) (fugitive's "arguable acceptability as
24   a tolerable bail risk" is not a special circumstance).

25       CASTILLO MURGA's suggestion that his support in the community is

26   _____
27   fugitive may not "produce witnesses whose testimony contradicts
     evidence already offered by the government").  In other words, the
     fugitive cannot offer evidence that would lead to an evidentiary
28   dispute.  See Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978);
     Santos, 830 F.3d at 992; Barapind, 400 F.3d at 749-50.

a "special circumstance," fails because courts, including this one, have rejected such an assertion. <u>See, e.g.</u>, <u>Beresford-Redman</u>, 753 F. Supp. 2d at 1089-90 (denying bail, despite strong family and community ties in United States, finding that letters in support from friends, family, and business associates are not a special circumstance justifying bail); <u>Azizi</u>, 2014 WL 1995083, at *9 (denying bail despite individual having no criminal record, the alleged offenses were non-violent, and strong ties to community); <u>Nacif-Borge</u>, 829 F. Supp. at 1220 (finding that eighty-five letters in support, attesting to fugitive's character, did not constitute special circumstance justifying bail); <u>In re Extradition of Sutton</u>, 898 F. Supp. 691, 696 (E.D. Mo. 1995) ("[A]n extradition fugitive's character and background . . . are not by themselves a special circumstance sufficient to require release on bail in an international extradition case.").

　　　　5.　<u>CASTILLO MURGA's Alleged Lack of Danger to the Community is Not a "Special Circumstance"</u>

CASTILLO MURGA claims that his alleged lack of a criminal history and lack of danger to the community amount to a "special circumstance." (<u>See</u> Docket No. 17 at 12.) However, this is an independent condition precedent for releasing a fugitive on bail, and does not factor into the "special circumstances" inquiry. <u>See, e.g.</u>, <u>Santos</u>, 473 F. Supp. 2d at 1035-36 ("The party seeking release on bail in an international extradition case also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community, but those factors are not special circumstances which alone justify release on bail"); <u>In re Extradition of Russell</u>, 805 F.2d 1215, 1216 (5th Cir.

14

1986) ("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); <u>Williams</u>, 611 F.2d at 915 ("even applicant's arguable acceptability as a tolerable bail risk" is not "special circumstance"); <u>cf., e.g.</u>, <u>Salerno</u>, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case"); <u>United States v. Leitner</u>, 784 F.2d 159, 161 (2d Cir. 1986) ("Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance."). In light of the facts of this case, CASTILLO MURGA does pose a danger to the community.

> 6. <u>CASTILLO MURGA's Humanitarian Factors are Not "Special Circumstances"</u>

CASTILLO MURGA asserts that he should be released on bail because "[t]he detention has adversely affected his mental health and personal development . . . [and] [b]eing separated from his family imposes significant emotional and financial hardship on both him and his loved ones." (Docket No. 17 at 13.) While the United States is sympathetic, the fact remains that the person detained and family members experience "hardship" in almost every case where one person is detained. As one court noted,

> [T]hat possibility [of unwelcome financial strain], however unfortunate, is present in almost every case where a defendant with family faces detention pending adjudication. Accordingly, the fact that the defendant's family depends on him for financial and emotional support is not a special circumstance weighing in favor of release.

<u>In re Extradition of Drumm</u>, 150 F. Supp. 3d 92, 99 (D. Mass. 2015); <u>see</u> <u>Antonowicz</u>, 244 F. Supp. 3d at 1072 ("The Court does not intend to understate the financial and emotional burdens

15

1  that detention causes, but those burdens are present in almost

2  all cases and therefore do not constitute a 'special

3  circumstance.'") (internal quotation and citation omitted);

4  Beresford-Redman, 753 F. Supp. 2d at 1087 ("Emotional hardship

5  for the family of a fugitive facing extradition is present in

6  almost all cases and therefore does not constitute a 'special

7  circumstance.'") (internal quotation and citation omitted); In

8  re Extradition of Mahabir, 858 F. Supp. 504, 508 (D. Md. 1994)

9  ("A defendant's incarceration regularly creates difficulties for

10 him and his family."); see also Smyth, 976 F.2d at 1535-36

11 (special circumstances must be "extraordinary" and not factors

12 applicable to all fugitives facing extradition).

13      Accordingly, any hardship suffered as a result of CASTILLO

14 MURGA's detention during this extradition proceeding cannot justify

15 his release.

16              7.    The Possibility of Delayed Extradition Proceedings is

17                    Not a "Special Circumstance"

18      The Ninth Circuit has recognized that "'unusual delay in the

19 appeal process' can be a 'special circumstance' that will justify

20 bail . . . ." See In re Extradition of Kirby,

21 106 F.3d 855, 863 (9th Cir. 1996) (quoting Salerno, 878 F.2d at 317).

22 However, the delay must be something beyond what are simply "factors

23 applicable to all defendants facing extradition." Mainero, 950 F.

24 Supp. at 294. Further, any delay caused by or attributed to the

25 fugitive is not a "special circumstance." See, e.g., Kin-Hong, 83

26 F.3d at 525 (rejecting bail claim where "[t]o the extent that there

27 has been some delay, [the petitioner] himself is partly

28 responsible"); In re Extradition of Heilbronn,

16

773 F. Supp. 1576, 1581 (W.D. Mich. 1991) (court unsympathetic to petitioner who requested several delays); United States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912) (delay justifies bail "only where the hearing date comes and the complainant is not ready to proceed"). Regarding anticipated delay, [the fugitive] has not shown circumstances that are different from 'factors applicable to all defendants facing extradition.'") (citations omitted).

In his opposition, CASTILLO MURGA claims that the "anticipated delays in the extradition proceedings contribute to the special circumstances." (Docket No. 17 at 13.) However, CASTILLO MURGA does not elaborate on reasons why his extradition matter will be unusually lengthy, nor is the United States aware of any such reasons. See Kirby, 106 F.3d at 863; see also Santos, 830 F.3d at 990 ("Once the warrant is issued, the district court, which may include a magistrate judge, conducts a hearing to determine whether there is evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or, in other words, whether there is probable cause.") (internal quotation and citations omitted). In other words, CASTILLO MURGA does not describe why there would be any delays, other than those generated by litigation decisions entirely within his control, such as seeking a writ of habeas corpus or appeals thereof. See Smyth, 976 F.2d at 1535-36. Accordingly, he has failed to demonstrate a special circumstance based on alleged delay.

In short, CASTILLO MURGA fails to sufficiently establish a single factor that would warrant "special circumstances." Even considering the factors that he alludes to together in a favorable light, CASTILLO MURGA falls well short of carrying his burden of establishing "special circumstances" for the purposes of overcoming

17

the strong presumption against bail.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny CASTILLO MURGA's application and continue to detain him pending extradition.  If, however, the Court is inclined to place CASTILLO MURGA on bond, the United States respectfully requests the opportunity to advocate for the conditions of his bond.


Dated: December 12, 2024          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  */s/ John J. Lulejian*
                                  JOHN J. LULEJIAN
                                  MITCHELL M. SULIMAN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for United States of America, certifies that this brief contains 4,860 words, which complies with the word limit of L.R. 11-6.1.


Dated: December 12, 2024         */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney