JS-3

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF <br> MICHAEL ALEJANDRO CASTILLO MURGA, <br> A Fugitive from the Government of El Salvador | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 2:24-mj-06387-SP <br><br> **MEMORANDUM OPINION, CERTIFICATION OF EXTRADITABILITY, AND ORDER OF COMMITMENT** |

## I.
## INTRODUCTION

The United States of America, on behalf of the Government of El Salvador, requests the extradition of Michael Alejandro Castillo Murga pursuant to an extradition treaty between the United States of America and the Republic of El Salvador signed on April 18, 1911 ("Treaty"). *See* 37 Stat 1516, 1911 WL 18390.

On October 21, 2024, the United States of America filed a complaint seeking the arrest and extradition of Castillo Murga. Castillo Murga was arrested in Beaumont, California on October 23, 2024 pursuant to an arrest warrant. At his initial appearance that day, the court ordered Castillo Murga detained pending extradition proceedings.

1

On December 20, 2024, the United States filed a Request for Certification of Extradition (the "Request") supported by exhibits.  The United States filed its memorandum in support of extradition on January 17, 2025.  Castillo Murga filed an opposition to the Request, which he titled a Reply to Government's Extradition Memorandum ("Opposition" or "Opp."), on March 11, 2025.  The United States filed a Reply in support of extradition on April 1, 2025.  On April 8, 2025, the court conducted an extradition hearing pursuant to 18 U.S.C. § 3184.

After careful review and consideration of the documentary evidence, the pleadings, and the arguments presented at the hearing, the court makes the following findings and certifies the elements of extradition are met.

## II.

## **BACKGROUND**

This extradition proceeding arises from a 2019 killing and attempted killing in El Salvador.

Castillo Murga met Melvi Fernanda Najera Quezada at a political party meeting in 2013, and they later began a romantic relationship.  Docket no. 23-2 (Request, Ex. B ("Ex. B")) at 38, 113.[1]  Quezada gave birth to their son in 2017.  *Id*.

On January 31, 2019, Castillo Murga picked up Quezada and their son, who was then one year and seven months old, from Quezada's mother's house.  *Id*. at 30-40, 113-15.  On February 1, 2019, Salvadoran authorities discovered Quezada's body at kilometer 99 of the road that leads from Ahuachapan to Sonsonate in the municipality of Concepcion de Ataco.  *Id*. at 65, 113.  Three days later, Quezada's son was found near the area where her body was found.  *Id.* at 65, 113, 133.  Quezada's son was severely dehydrated due to starvation and had signs of abuse.  *Id.*  Quezada's mother identified both her daughter's body and her grandson that day.  *Id*. at 113.  An autopsy determined

---

[1]     Citations to Exhibits A and B of the Request refer to the CM/ECF designated page numbers for docket nos. 23-1 and 23-2 respectively.

Quezada died from a massive hemorrhage resulting from lacerations to her neck caused by a "sharp stabbing weapon." *Id*. at 60, 86, 133.  Quezada also had other wounds.  *Id.*

Meanwhile, on February 2, 2019, Castillo Murga crossed from El Salvador into Guatemala on foot, using his United States passport.  *Id*. at 170.  Castillo Murga's grandmother also left El Salvador for Guatemala.  *Id.* at 65.  Both later moved to the United States.  *Id*.

On June 8, 2019, an arrest warrant was issued in El Salvador for Castillo Murga for aggravated feminicide and imperfect murder.[2]  *Id*. at 139.  On October 12, 2023, the Supreme Court of Justice of El Salvador issued Criminal Letter Rogatory No. 144-S-2023 in which it, after reviewing the proceedings and evidence against Castillo Murga, found he was an extraditable person for the offenses of voluntary homicide and attempted voluntary homicide.  *Id*. at 12; *see id*. at 6-15.  On November 2, 2023, the Embassy of the Republic of El Salvador in the United States submitted Diplomatic Note ESWDC/SC/No. 004/2023, formally requesting the extradition of Castillo Murga.  Docket no. 23-1 (Request, Ex. A ("Ex. A")) at 2-3 (Declaration of Noah L. Browne ("Browne Decl.")) ¶ 3; Ex. A at 5-7.  The Embassy of El Salvador later submitted another diplomatic note, dated June 4, 2024, providing additional information in support of the extradition request. Browne Decl. ¶ 3; Ex. A at 8-9.

On October 21, 2024, the United States filed a complaint in this court for the arrest and extradition of Castillo Murga.  Docket no. 1.  This court issued an arrest warrant the same day.  Docket no. 3.  Castillo Murga was arrested in this district two days later and ordered detained.  *See* docket nos. 9, 11.  The United States filed the instant Request on December 20, 2024.  Docket no. 23.

//

//

---

[2]    Feminicide and femicide may be used interchangeably throughout this order.

3

# III.

## THE EXTRADITION PROCESS AND LEGAL STANDARDS

"Extradition is a matter of foreign policy" and the judiciary has a limited role in the extradition process. *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006) (citation omitted); *Martinez Santoyo v. Boyden*, 130 F.4th 784, 787 (9th Cir. 2025). The extradition process begins when the country seeking extradition files a request with the U.S. Department of State. *Martinez Santoyo*, 130 F.4th at 787; *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016). If the State Department determines the request falls within the governing treaty, a U.S. Attorney initiates judicial proceedings by filing a complaint indicating an intent to arrest and extradite. *Santos*, 830 F.3d at 991. After a warrant is issued and the person apprehended, a district judge or magistrate judge conducts a hearing to determine whether the crime is extraditable and there is probable cause to sustain the charge. *Id.*; *Patterson v. Wagner*, 785 F.3d 1277, 1279-80 (9th Cir. 2015).

In order to obtain a certificate of extraditability, the United States must establish: (1) the court has jurisdiction to conduct extradition proceedings; (2) the court possesses personal jurisdiction over the person named in the extradition request; (3) an extradition treaty is in force and effect; (4) the person named in the extradition request is being sought for an offense that falls within the terms of the applicable extradition treaty; and (5) there is competent evidence to establish probable cause that the person named in the extradition request committed the charged offense. *U.S. v. Perilla Umbarila*, 562 F. Supp. 3d 729, 734 (C.D. Cal. 2022) (citing *Santos*, 830 F.3d at 991); *In re Extradition of Patterson*, 2012 WL 5379152, at *2 (C.D. Cal. Oct. 30, 2012).

If the court finds there is probable cause to sustain the charge, it "*must* certify the extradition to the Secretary of State, who ultimately determines whether to extradite the accused to the requesting state." *Martinez Santoyo*, 130 F.4th at 788; *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005) (the court "'has no discretionary decision to make'") (citation omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## DISCUSSION

### A.    Certification of Extraditability

Based on the parties' submissions and as confirmed at the extradition hearing, only two of the elements of the certification process are in dispute: (1) whether the charges against Castillo Murga fall within the terms of the Treaty; and (2) whether there is probable cause that Castillo Murga committed the offenses charged.  For the reasons discussed below, the court finds all five elements for certification of extraditability are satisfied.

### 1.    Subject Matter Jurisdiction

This court has subject matter jurisdiction to conduct extradition proceedings pursuant to 18 U.S.C. § 3184 and General Order 05-07 of the United States District Court for the Central District of California.

### 2.    Personal Jurisdiction

The court has jurisdiction over a fugitive found within its jurisdictional borders. 18 U.S.C. § 3184 (a United States judge or magistrate judge "may, upon complaint made under oath, charging any person found within his jurisdiction, . . . issue his warrant for the apprehension of the person so charged"); s*ee Perilla Umbarila*, 562 F. Supp. 2d at 735.  Castillo Murga was arrested in the Central District of California on October 23, 2024.  *See* docket no. 9.  Accordingly, Castillo Murga was "found within [this] jurisdiction" and the court has personal jurisdiction over him.

### 3.    A Valid Extradition Treaty Is in Full Force and Effect

Courts defer to the State Department's determination of the validity of a treaty. *See Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).  Here, Noah L. Browne, an attorney adviser in the Office of the Legal Adviser for the Department of State, submitted a declaration stating the United States and El Salvador have had a valid extradition treaty in force and effect since 1911.  Browne Decl. ¶ 2; *see* Ex. A at 10-15.  The Treaty was

5

signed on April 18, 1911, and entered into full force on July 10, 1911. Browne Decl. ¶ 2; Ex. A at 10. As such, the court finds the Treaty is in full force and effect.

### 4.    The Charged Offenses Are Extraditable Under the Treaty

The United States must prove that Castillo Murga is charged with an extraditable offense covered by the Treaty. El Salvador has charged Castillo Murga with aggravated feminicide in violation of Articles 45(a) and 46(c), (e) of the Special Law for a Life Free of Violence for Women, and with imperfect homicide in violation of Articles 24 and 128 of the Penal Code of El Salvador.[3] Browne Decl. ¶ 5; Ex. A at 8; Ex. B at 6. The Supreme Court of Justice of El Salvador certified that the extraditable offenses here are voluntary homicide and attempted voluntary homicide. Ex. B at 12.

Article I of the Treaty states that the United States and El Salvador shall return persons "who may be charged with, or may have been convicted of any of the crimes specified in Article II of this Treaty committed within the jurisdiction of one of the Contracting Parties." Ex. A at 10. Article II of the Treaty provides the list of extraditable offenses. *Id*. at 11-12. Among the extraditable offenses are murder (defined as "comprehending the crimes designated by the terms of parricide, assassination, manslaughter when voluntary; poisoning or infanticide") and attempted murder. *See id*. at 11.

Article I of the Treaty also sets forth a "dual criminality" requirement. It provides that "surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there

---

[3]    The decision of the Judge of Peace of Concepcion de Ataco, who ordered the charges brought against and arrest warrant issued for Castillo Murga, refers to the latter charge as imperfect murder. Ex. B at 139. But the letter rogatory from the Supreme Court of Justice of El Salvador finding Castillo Murga extraditable, as well as the request for extradition from the Embassy of El Salvador, refer to the latter charge as imperfect homicide. Ex. A at 8; Ex. B at 6. Thus, the court may use imperfect murder and imperfect homicide interchangeably throughout this order.

1    committed." *Id*. at 10-11; *see Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008)

2    (interpreting the same language as a "dual criminality" requirement).  Under the principle

3    of "dual criminality," an accused may "'be extradited only if the alleged criminal conduct

4    is considered criminal under the laws of both the surrendering and requesting nations.'"

5    *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) (citation omitted); *Quinn v. Robinson*,

6    783 F.2d 776, 783 (9th Cir. 1986).

7        Notwithstanding that Castillo Murga implicitly acknowledges attempted murder is

8    covered by the Treaty – and thus that he is charged with at least one extraditable offense

9    – Castillo Murga opposes extradition on the ground that femicide is not an extraditable

10    offense under the Treaty.  Opp. at 3, 7-8.  Castillo Murga contends femicide is not among

11    the listed extraditable offenses and is not analogous to murder because the gender-based

12    classification is absent in traditional murder statutes in the United States.  Opp. at 3, 7.

13        In determining whether femicide is an extraditable offense under the Treaty, the

14    court bears in mind that "a narrow and restricted construction is to be avoided as not

15    consonant with the principles deemed controlling in the interpretation of international

16    agreements."  *Factor v. Laubenheimer*, 290 U.S. 276, 293, 54 S. Ct. 191, 78 L. Ed. 315

17    (1933).  Rather, a treaty's "obligations should be liberally construed so as to effect the

18    apparent intention of the parties to secure equality and reciprocity between them.  For

19    that reason if a treaty fairly admits of two constructions, one restriction the rights which

20    may be claimed under it, and the other enlarging it, the more liberal construction is to be

21    preferred."  *Id.* at 293-94 (citations omitted).

22        Properly construed, the court finds that femicide is an extraditable offense covered

23    under the Treaty.  Article 45 of the El Salvador Special Comprehensive Law for a Life

24    Free of Violence for Women provides that femicide is committed by "[w]hoever causes

25    the death of a woman mediating reasons of hatred or contempt for her status as a

26    woman."  Ex. B. at 32.  Femicide in El Salvador, therefore, is the murder or manslaughter

27    of a woman for a gender-related reason.  As discussed above, murder and voluntary

28    manslaughter are extraditable offenses under the Treaty.  Ex. A at 11.  And the Supreme

Court of Justice of El Salvador certified that the femicide charge against Castillo Murga here constituted the extraditable offense of voluntary homicide. Ex. B at 12. Because femicide is a form of murder or manslaughter, it is covered by the treaty. *See Matter of Juarez*, 2025 WL 776081, at *4 (E.D. Cal. Mar. 11, 2025) (finding that femicide would fall under murder statutes in the United States and is therefore an extraditable offense under the treaty between the United States and Mexico).

The fact that the additional femicide element of murder for a gender-related reason is absent in federal murder statutes is of no consequence. "The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical." *Clarey*, 138 F.3d at 766. "For two offenses to be substantially analogous, the court looks at whether '[t]he essential character of the transaction is the same, and made criminal by both statutes.'" *U.S. v. Knotek*, 925 F.3d 1118, 1131 (9th Cir. 2019) (citation omitted). "What matters is that the two country's laws are 'directed to the same basic evil,'" and that one country's laws are broader than the other is irrelevant. *Id*. at 1132 (citation omitted). Here, the laws of both countries target the "same basic evil" of the taking of another's life. *See Clarey*, 138 F.3d 765-66 (Mexican law that required only a homicide occur was substantially analogous to United States felony murder statute that required a homicide be perpetrated during the commission of a violent felony because both were used to punish acts of the same general character).

Accordingly, because Castillo Murga's charged femicide conduct qualifies as murder in the United States, femicide constitutes an extraditable offense covered by the Treaty and "dual criminality" is satisfied. In addition, the imperfect homicide charge against Castillo Murga is also an extraditable offense covered by the Treaty.

### 5.    The United States Has Established Probable Cause

Finally, the United States must demonstrate there is probable cause that Castillo Murga committed the offenses underlying the extradition request. Castillo Murga argues the evidence is insufficient to establish probable cause because there are no firsthand

8

testimonial or physical evidence placing him at the crime scene or directly implicating him.  Opp. at 10-12.

"[E]xtradition hearings are not trials."  *Martinez Santoyo*, 130 F.4th at 788. Rather, they function more like a grand jury investigation or preliminary hearing.  *Santos*, 830 F.3d at 991; *see Perilla Umbarila*, 562 F. Supp. 3d at 741.  The court "does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."  *Quinn*, 783 F.2d at 815.  Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure apply.  *Santos*, 810 F.3d at 992.  The evidence submitted by the government may be admitted as long as it is authenticated and is admissible for similar purposes by the courts of the country seeking extradition.  *Id*.  The court may consider, among other things, hearsay evidence, unsworn statements, and summaries by the police or prosecutor of witness statements.  *Zanazanian v. U.S.*, 729 F.2d 624, 626-28 (9th Cir. 1984); *In re Extradition of Luna-Ruiz*, 2014 WL 1089134, at *4 (C.D. Cal. Mar. 19, 2014) (citing *Collins v. Loisel*, 259 U.S. 309, 317, 42 S. Ct. 469, 66 L. Ed. 956 (1922)).

To establish probable cause, the United States has submitted certified and authenticated copies of, among other things: (1) the June 8, 2019 decision of the Peace Judge of Concepcion de Ataco following preliminary criminal proceedings, in which the judge ordered the charges to be brought against Castillo Murga and for his arrest and detention (Ex. B at 112-38; *see id*. at 8-9); (2) interview affidavits from a prosecutor and investigator (*id*. at 18-30, 34-36); (3) the prosecutor's charging document (*id*. at 37-95); (4) criminal letter rogatories from the Supreme Court of Justice Clerk's Office (*id*. at 6-15, 145-50, 154-58); and (5) a photograph sent by Castillo Murga around the time of Quezada's death (*id.* at 160).  The evidence discussed in the submissions include witness statements, telephone records, forensic reports, and other evidence.  *See generally* Ex. B. //

9

### a.    Witnesses Statements to Police

*Quezada's Mother.* Quezada's mother told the police that Quezada withheld the identity of Castillo Murga as her son's father from her for over a year after his birth, until Castillo Murga visited Quezada and their son at her house. *Id*. at 23, 38-39, 113-14. Castillo Murga promised he would financially support and visit his son, and would leave Quezada forty dollars under a rock. *Id*. at 23, 39, 115. Quezada's mother reported to the police that her daughter and grandson left the house around 6:30 p.m. on January 31, 2019 to go to with Castillo Murga to a house he had rented for them. *Id*. at 24, 39-40, 62, 114, 132. Quezada observed them getting into a gray vehicle. *Id*. at 24, 40, 115. At the time, Quezada was wearing black leggings. *Id*. at 24, 40, 115. As Quezada was leaving, her mother told her to take care of her son, to which Quezada replied, "mom I am going with his father, what can happen." *Id*.

*Eyewitnesses.* Two eyewitnesses, who were in transit on January 31, 2019, passed a vehicle on Ataco highway around 7:00 p.m. *Id*. at 25, 40, 89, 115; *see id*. at 133. They observed a tall, thin male assaulting a female wearing black leggings or pants, who was in the back seat of a car kicking and screaming. *Id*. at 25, 40, 80, 89, 115.

*Cooperating Witnesses.* Two cooperating witnesses, "Codename Uno" and "Codename Two,"[4] provided the police details about Castillo Murga's confession and efforts to conceal his crime. *See id*. at 26-28, 41-43, 116-18, 133. The cooperating witnesses were asked to meet at Castillo Murga's grandmother's house, and when they arrived they observed a gray, four-door Mitsubishi Lancer they knew Castillo Murga always drove. *Id*. at 26, 41, 116. The cooperating witnesses saw Castillo Murga covered in blood. *Id*. When Codename Uno asked Castillo Murga what happened, Castillo Murgo told the cooperating witnesses a woman extorted him and wanted to kill him, and so he had killed her and her son. *Id*. The cooperating witnesses also heard Castillo

---

    [4]     The submissions also refer to "Codename Uno" and "Codename Two" as "Clave Uno," "Clave Dos," "code reports one and two," "Code One," "Key One," and "Key Two." *See, e.g.*, Ex. B at 77, 89.

Murga admit the same to his grandmother Edith del Carmen Rivas de Murga, his girlfriend Jaqueline Alejandra Martinez Herrera, and lawyer Donald Valdivieso, as well as saw him show his grandmother how and where he stabbed Quezada. *Id.* They provided details as to who helped conceal the crime and what steps were taken, including burning items from the car and Castillo Murga's clothing. *See id.* at 26-28, 41-43, 116-18. They also saw Quezada's personal identity document. *Id.* at 24, 41, 116.

### b. Telephone Records

Salvadoran authorities examined the mobile telephone records for Castillo Murga, his girlfriend Herrera, and his grandmother. *See id.* at 25, 65, 85, 87, 89, 134.

At some point prior to Quezada's death, Quezada sent Castillo Murga a text and threatened to inform "someone" of their son's existence. *Id.* at 88. On January 5, 2019, Herrera complained to Castillo Murga about a relationship he had with another woman. *See id.* at 66, 88.

On January 31, 2019, Castillo Murga's cellular telephone was in Quezada's neighborhood around 6:20 p.m. and in the area where her body was found between 6:44 p.m. and 7:10 p.m. *Id.* at 25, 89, 115. Castillo Murga did not answer any of Herrera's text messages or calls between 6:47 p.m. and 7:03 p.m. *Id.* 25, 115. At approximately 7:03 p.m., Castillo Murga sent Herrera a photograph of himself covered with blood on his face, neck, and chest. *Id.* at 25, 65, 115, 160. Approximately, three minutes later, Castillo Murga, in an agitated and scared tone, left Herrera a voicemail stating he would call her soon. *Id.* at 25, 65, 89, 115. Castillo Murga later sent messages to Herrera in which he admitted to having killed a person. *Id.*

Herrera's mobile telephone records show that she subsequently called Castillo Murga's grandmother on January 31, 2019, and the call lasted from 7:03 p.m. until 7:19 p.m. *Id.* at 25-26, 115-16. Castillo Murga's grandmother then called cooperating witness "Codename Uno" to arrange for him and "Codename Two" to meet at her house. *Id.* at 26, 89, 116.

11

### c.    Other Evidence

Surveillance video shows that Castillo Murga was with Quezada a few hours before the murder and driving the same vehicle in question. *Id.* at 87.

DNA evidence establishes that Castillo Murga is the father of Quezada's son. *See id.* at 90, 92.  Quezada's son was found dehydrated and malnourished. *Id.* at 113, 133.

Castillo Murga argues this evidence is lacking and the witnesses lack credibility. Opp. at 11.  To the contrary, the evidence overwhelmingly establishes probable cause. The evidence shows that the two victims were last seen with Castillo Murga, two witnesses observed a struggle between a man and woman in a car near where Quezada's body was found, Castillo Murga was in the area where the offenses occurred, Castillo Murga was covered in blood around the time of the murder, and two witnesses state Castillo Murga confessed to the crimes and they helped him conceal it.  As for the credibility of the witnesses, the limited inquiry here does not permit the court to weigh their credibility. *See, e.g, Matter of Juarez*, 2025 WL 776081, at *10 ("factual disputes regarding the weight and credibility of evidence are reserved for trial in" the requesting country); *Matter of Extradition of Hector Manuel Lara Gutierrez*, 2017 WL 8231237, at *4 (C.D. Cal. Feb. 22, 2017) (court does not weigh a witness's credibility, but rather only determines whether any competent evidence establishes probable cause).

Accordingly, there is sufficient competent evidence to support probable cause that Castillo Murga committed both of the charged offenses.

## B.    Other Arguments

In opposition to extradition, Castillo Murga also raises several other arguments separate from the five elements of certification: (1) the United States has no obligation under the Treaty to extradite U.S. citizens; (2) his prosecution is politically motivated; (3) the legal proceedings in El Salvador violate its Constitution; and (4) he would be subjected to human rights violations in El Salvador.  *See* Opp. at 3-10.  None of these arguments are appropriate for this court's consideration.

1     First, "United States citizenship does not bar extradition by the United States."

2  *Quinn*, 783 F. 2d at 782.  Article VIII of the Treaty provides, "[u]nder the stipulations of

3  this Treaty, neither of the Contracting Parties shall be bound to deliver up its own

4  citizens."  Ex. A at 13.  This clause neither obligates nor prohibits the United States from

5  extraditing its own citizens.  When a treaty "does not obligate the United States to

6  extradite its citizens to a foreign country, the Secretary of State may, nevertheless, order

7  the surrender to that country of a United States citizen whose extradition has been

8  requested by that country if the other requirements of that treaty or convention are met."

9  18 U.S.C. § 3196.  Thus, Congress has empowered the Secretary of State to "exercise this

10  country's sovereign discretion to extradite American citizens as the national interest

11  dictates."  *Hilario v. U.S.*, 854 F. Supp. 165, 170 (E.D.N.Y. 1994).  As such, once the

12  court orders a certificate of extraditability, whether the United States chooses to extradite

13  Castillo Murga is not a question for the court.

14     Second, Castillo Murga contends his prosecution may be politically motivated

15  because he met Quezada at a "political party meeting," and implies that Article III of the

16  Treaty, which bars extradition for crimes "of a political character," applies.  *See* Opp. at

17  3, 9-10.  "For a crime to qualify as 'one of a political character,' [] there must be: (1) the

18  occurrence of an uprising or other violent political disturbance at the time of the charged

19  offense, and (2) a charged offense that is incidental to in the course of, or in furtherance

20  of the uprising," *Barapind v. Enomoto*, 400 F.3d 744, 750 (9th Cir. 2005) (quotation

21  marks and citation omitted).  Neither element exists here.  The offenses charged against

22  Castillo Murga are not "of a political character."

23     Third, Castillo Murga asserts that the Salvadoran legal proceedings violated the

24  Salvadoran Constitution.  Opp. at 8.  Under principles of international comity, the court

25  may not second guess another country's interpretation of its own constitution or laws.

26  *U.S. v. Zelaya-Romero*, 2018 WL 1033235, at *5 (S.D.N.Y. Feb. 21, 2018); *see Fejfar v.*

27  *U.S.*, 724 F. App'x 621, 622 (9th Cir. 2018) ("Judicial inquiry into foreign criminal

28  procedural issues is limited in the extradition context."); *Skaftouros v. U.S.*, 667 F.3d 144,

156 (2d Cir. 2011) ("[I]t has long been recognized that an extradition judge should avoid making determinations regarding foreign law."); *Matter of Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980) ("While our courts should guarantee that all persons on our soil receive due process under our laws, that power does not extend to overseeing the criminal justice system of other countries.").  The court therefore may not examine the Salvadoran Supreme Court's determination that Castillo Murga may be extradited for femicide (homicide) and imperfect homicide (attempted homicide).  *See Skaftouros*, 667 F.3d at 156 ("Any arguments regarding the demanding country's compliance with its own laws, therefore, are properly reserved for the courts of that country.").

Finally, Castillo Murga argues the court should deny certification because of human rights violations in El Salvador's prisons.  Opp. at 9-10.  Under the rule of non-inquiry, "it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state." *Prasoprat*, 421 F.3d at 1016; *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 960 (9th Cir. 2012) (Thomas, J., concurring in part); *see Munaf v. Green*, 553 U.S. 674, 700-01, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008) ("[I]t is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments.").  The court therefore does not have the authority to decline to issue a certificate of extraditability on humanitarian grounds.

//

//

14

## V.

### <u>CERTIFICATION AND ORDER</u>

Based upon the foregoing and the court's consideration of the entire record in this matter, THE COURT HEREBY CERTIFIES to the United States Secretary of State that Michael Alejandro Castillo Murga is extraditable to the Republic of El Salvador for the offenses for which extradition has been requested.

IT IS ORDERED that Michael Alejandro Castillo Murga remain committed to the custody of the United States Marshal pending a final decision on extradition and until the surrender to El Salvador can be effectuated pursuant to the Treaty and 18 U.S.C. §§ 3184, 3186.

IT IS FURTHER ORDERED that the Clerk of the Court deliver forthwith to the United States Attorney for the Central District of California a certified copy of this Certification and Order, who shall forward without delay certified copies of the same to the Secretary of State for appropriate disposition.

Dated: July 28, 2025

_____
SHERI PYM
United States Magistrate Judge